UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-304-GWU


RANDY J. JONES,                                                                    PLAINTIFF,


VS.                                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

Jones

> Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>
> 5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u>  20  C.F.R.  404.1520(d),  404.1526(a), 416.920(d), 416.926(a).
>
> 6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If  no,  proceed  to  Step  7.   <u>See</u>  20  C.F.R. 404.1520(e), 416.920(e).
>
> 7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant  is  not  disabled.    <u>See</u>  20  C.F.R.  404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

Jones

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

3

Jones

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987).  Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Jones

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Jones

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d

6

Jones

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Randy J. Jones, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative cervical disc and joint disease, a pain disorder, a depressive disorder, an anxiety disorder, estimated borderline to high average intellectual functioning, decreased hearing with adequate conversational hearing, and a history of vertigo and tinnitus controlled with medication.  (Tr. 23).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Jones retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 26-9).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs assuming that he were capable of "light" level exertion, and needed to alternate sitting or standing every 15 to 30 minutes, and also had the following non-exertional impairments.  (Tr. 436).  He: (1) was unable to climb ladders or perform repetitive bending; and (2) had

7

Jones

a "limited but satisfactory" ability to relate to coworkers, deal with the general public, relate to supervisors, deal with work stresses, understand, remember, and carry out detailed instructions, and respond appropriately to changes in the workplace. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 437).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Jones alleged disability beginning May 31, 2002 due to a neck and back injury which occurred when he backed his front end loader into the highwall at a mining operation. (Tr. 104, 420). As result he complained of unbearable headaches as well as pain and numbness in his back, arms, and legs. (Tr. 421). He had been told of a disc injury in his neck, but was informed that surgery would not help his pain. (Tr. 422). He could engage in very few daily activities, although he was able to sit for 15 minutes and stand and walk for 15 minutes, drive, and attend church and visit his relatives on good days. (Tr. 424-6). He had developed depression as a result of not being able to work or support his family. (Tr. 422). He described crying spells because his wife had to take a job, but was seeing a psychiatrist and taking the medication Lexapro, which he admitted helped "a lot." (Tr. 423). He denied any side effects from medication. (Tr. 424).

8

Jones

The plaintiff's treating psychiatrist, Dr. Kelly Walker, submitted office notes from the period September 30, 2003 to August 9, 2004.  At the time of the first visit, Mr. Jones related that his problems included crying almost daily and having suicidal thoughts along with decreased appetite and a "20-30 pound weight loss."  (Tr. 349). Dr. Walker described the plaintiff as alert and oriented but with a depressed mood and a labile affect, and added that Mr. Jones appeared fatigued and cried through much of the evaluation.  (Tr. 350).  His concentration was also decreased.  She diagnosed recurrent severe major depressive disorder and nicotine dependency with a Global Assessment of Functioning (GAF) score of 45.  (Tr. 351).  A GAF score of 45 reflects serious symptoms or any serious impairment in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition--Text Revision) (DSM-IV-TR), p. 34.  Later, the medication Trazodone was added, and Mr. Jones reported in December that he felt a little better and was sleeping somewhat better.  (Tr. 358).  In January, the plaintiff reported less frequent depressed moods on Lexapro, and continued to describe the medication as helpful with no significant side effects in June, 2004.  (Tr. 354).  However, the medication Seroquel was added, which he said allowed better sleep at the time of the last reported office visit to Dr. Walker on August 9, 2004.  (Tr. 352).  He described his mood as "so-so" due to back pain and worry, but had no suicidal ideation.  (Id.). Dr. Walker continued the same medications.

9

Jones

On November 22, 2004, Dr. Walker completed a Mental Residual Functional Capacity Assessment indicating that Mr. Jones had poor or no ability to deal with the public, use judgment, deal with work stresses, function independently, maintain attention and concentration, understand, remember, or carry out detailed or complex job instructions, and demonstrate reliability. (Tr. 347-8). Every other category was indicated as being "seriously limited but not precluded." The restrictions were said to be based on his last office visit of August 9. (Id.).

The ALJ rejected the opinion of the treating psychiatrist on several grounds, citing the opinion given by a consultative psychiatric examiner, Dr. Kevin Eggerman, who examined Mr. Jones in August, 2003, shortly before his first visit to Dr. Walker. Dr. Eggerman noted that Mr. Jones was "somewhat histrionic" and briefly tearful, but otherwise had no affective distress and only moderate anxiety as a primary finding. (Tr. 278-82). Dr. Eggerman diagnosed an adjustment disorder with depressed mood, and assigned a GAF of 55-60. (Tr. 282). A GAF score in this range reflects only moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR, p. 34. Dr. Eggerman indicated that there would be "minimal" or mild" limitations in all areas of functioning except for his ability to respond appropriately to work pressures in a usual work setting, which was "mildly to moderately" limited. (Tr. 282-30). A state agency psychologist, Dr. Stephen Scher, reviewed the evidence at this point and concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 301, 313). The plaintiff asserts that the

10

Jones

opinion of a one-time examiner cannot be enough to overcome the opinion of a treating source such as Dr. Walker, but, in addition to Dr. Eggerman, the ALJ relied upon reports of Dr. Edward Workman, his treating pain specialist.  (Tr. 26).  Dr. Workman was a neuropsychiatrist who treated Mr. Jones for his complaints of chronic pain from December 4, 2003 to April 27, 2004, when he was released to return to work.  (Tr. 318).  Dr. Workman's initial evaluation included screening tests which were said to be positive for pain-induced depressive illness "in partial remission," and a mixed pain disorder with stress exacerbations of pain.  (Tr. 333-4).  However, Dr. Workman assigned a GAF score of 67.  (Tr. 335).  A GAF score from 61 to 70 is indicative of only "mild symptoms...or some difficulty in social, occupational or school functioning... but generally functioning pretty well, has some meaningful relationships" per the DSM-IV-TR. By February, 2003, Dr. Workman's testing indicated that Mr. Jones's depressive illness was only in the mild range and had responded to medication to some extent.  (Tr. 326).  Dr. Workman opined that, in his experience, mild to moderate depression "almost never yielded a work impairment." (Id.).  He felt that psychotic depression could cause a work impairment, but the plaintiff's depressive illness "does not have a psychotic component" and "I do not think it precludes his working." (Id.).  He added that a return to work would

11

Jones

"likely be highly beneficial in terms of energizing him and in preventing him wasting away at home."  (Id.).[1]

Since both Dr. Walker and Dr. Workman were treating sources, the ALJ could reasonably have accepted the opinion of Dr. Workman that the plaintiff did not have more than a "mild" mental impairment.  The ALJ also reasonably noted that Dr. Walker's treatment had been "sketchy with numerous missed appointments" and her notes were more reflective of the plaintiff's subjective complaints than Dr. Workman's.  Although it was not mentioned by the ALJ as a reason, the court notes that Dr. Walker had repeated the plaintiff's claim of a recent 20 to 30 pound weight loss, but she recorded his weight as 163 pounds (Tr. 350-1) and office notes from the plaintiff's treating family physician, Dr. Steven Roskos, showed that Mr. Jones weighed 163.8 pounds in April, 2002, shortly after he stopped working (Tr. 240).  This casts some doubt on the reliability of the information given to Dr. Walker.

The plaintiff's other argument is that the ALJ improperly discounted the credibility of his subjective complaints of pain under the standards set out in Duncan,

---

[1]On a subsequent visit, Dr. Workman noted that Mr. Jones remained off work at the request of Dr. Walker, who felt that he was too depressed to work, but the patient reported he was able to work on his daughter's Jeep and change the spark plugs without severe problems, indicating that "he can, in fact, do some form of work."  (Tr. 323-4).  Dr. Workman scheduled a repeat of a functional capacity examination (FCE) which had previously been obtained in 2003 and which had indicated that the plaintiff could perform "heavy" demand occupations.  (Tr. 211, 320).  The new FCE showed that Mr. Jones was capable of doing work in the "light DOT category."  (Tr. 318).  He released Mr. Jones to work "per FCE restrictions."  (Tr. 319).

12

Jones

supra.[2]  The ALJ stated that "the primary findings supporting limitations are muscle spasms and some minimal decreased sensation in the upper extremities." (Tr. 25). The ALJ concluded that the findings "would not reasonably be expected to produce the symptoms claimant alleges." (Id.).  The plaintiff asserts that the ALJ erroneously described his cervical spine MRI showing no nerve impingement and no herniation. (Id.).  While an initial MRI in May, 2002 was interpreted as showing some mild disc protrusion at C5-6, displacing the spinal cord (Tr. 193, 272), a subsequent MRI in February, 2003 showed only mild to minimal bulging and "minimal thecal sac effacement" with "[n]o evidence of direct impingement upon the cervical cord... and no significant foraminal stenosis" (Tr. 205, 225).  It was after this testing that Dr. Workman, the treating source, released the plaintiff to return to work at the "light" level, which is consistent with exertional level in the hypothetical question.  (Tr. 318, 436).  The ALJ also noted that the plaintiff had failed a drug testing, which cast further doubt on his credibility.  (Tr. 25, 231, 325-8).  Dr. Sam Kabbani, another treating source, continued to give the plaintiff injections, but did not list any functional restrictions, and no source placed permanent physical restrictions on the plaintiff greater than found by the ALJ. The plaintiff correctly points out that the ALJ did not discuss a "PNCV" and EMG test from March, 2004, administered in Dr. Kabbani's

---

[2]The plaintiff does not directly challenge the physical restrictions in the hypothetical question.  The court notes that the restrictions are supported by the results of the FCE obtained by Dr. Workman and by the opinion of state agency positions who reviewed a portion of the record.  (Tr. 285-91, 294-99).

Jones

office, which was interpreted as showing "neuropathy but no denervation." (Tr. 369-77). The meaning of such a finding is unclear, although it is noteworthy that Dr. Kabbani's physical examination did not show motor weakness or sensory loss, and reflexes were present and equal. (Tr. 277). In any event, given a lack of restrictions from Dr. Kabbani, or any other source, greater than in the hypothetical question, a remand for consideration on this point alone would not change the outcome of the case. Therefore, substantial evidence existed to discount the plaintiff's credibility.

Finally, the plaintiff requests a remand under Sentence Six of 42 U.S.C. Section 405(g) to consider new evidence which was submitted to the Appeals Council. The statute provides that a district court may remand a case for additional proceedings if it is found that the evidence at issue is both (1) "new" and "material," and (2) that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." Hollon ex rel. Hollon v. Commissioner of Social Security, 447 F.3d 477, 482 (6th Cir. 2006). Evidence is deemed "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." Id. at 483-4 (citation omitted). The new evidence consists of a vocational analysis by Dr. Rodney Caldwell which was conducted on March 16, 2005, although the report is dated July 27, 2005. (Tr. 413). Thus, the evidence was in existence before the ALJ's August 25, 2005 decision was issued. Counsel for the plaintiff states that it was not provided to him until December, 2005, however. Plaintiff's Brief in Support of Motion

14

Jones

for Summary Judgment, Docket Entry No. 11, p. 29.  Assuming that this provided
good cause for failing to incorporate it in the record before the ALJ, the new
evidence still fails the "materiality" prong.  Dr. Caldwell adopted the results of the
FCE conducted in April, 2004, which he stated were consistent with a limited range
of light work, and also administered achievement testing showing that the plaintiff
was capable of eighth-grade reading and seventh-grade arithmetic.  (Tr. 414).
However, he adopted the mental restrictions given by Dr. Walker in concluding that
the plaintiff could not perform any work existing in the economy.  (Tr. 414-15).  For
the reasons given above, substantial evidence supports the ALJ's rejection of Dr.
Walker's mental restrictions.  Therefore, there is no reason to think that the new
evidence would have changed the outcome of the prior proceedings.

        The decision will be affirmed.

        This the 2nd day of May, 2007.


                            **Signed By:**

                            _G. Wix Unthank_

                            **United States Senior Judge**

15